# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

ROBERT TERRY,           )
                                )
          **Plaintiff,**       )
                                )     **Civil Action No. 2:09-cv-0046**
      **v.**                   )     **Judge Nixon / Knowles**
                                )
**MICHAEL ASTRUE,**       )
**Commissioner of Social Security**   )
                                )
          **Defendant.**      )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Motion for Judgment on the Pleadings and supporting Memorandum of Law, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Nos. 19 and 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI[1] on June 1, 2005,[2] alleging that he had

been disabled since March 15, 2004, due to pain in his shoulder, back, neck, leg, elbow, and

chest.  Docket No. 13, Attachment ("TR"), TR 62-64, 82, 85.  Plaintiff's applications were

denied both initially (TR 20, 52-55) and upon reconsideration (TR 18, 48-49).  Plaintiff

subsequently requested (TR 45) and received (TR 26-30) a hearing.  Plaintiff's hearing was

conducted on June 18, 2008, by Administrative Law Judge ("ALJ") Jack Williams.  TR 171-198.

Plaintiff and vocational expert ("VE"), James D. Flynn, appeared and testified.  *Id.*

On June 27, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 8-

17.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant met the insured status requirements of the
>     Social Security Act through June 30, 2004.
>
> 2.  The claimant has not engaged in substantial gainful activity
>     since March 15, 2004, the alleged onset date (20 CFR
>     404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et
>     seq.*).
>
> 3.  The claimant has the following severe impairments: lumbar
>     degenerative disc disease and osteoarthritis in the right

---

[1] Plaintiff's SSI application and the SSA's reconsideration determination for Plaintiff's
SSI claim do not appear in the record.  Defendant, however, argues that Plaintiff submitted
claims for "disability insurance benefits under title II and Supplemental Security Income (SSI)
payments under title XVI of the Social Security Act."  Docket No. 20.  Furthermore, documents
in the record from various stages of the claim process indicate that Plaintiff had submitted claims
for both SSI and DIB.  Such documents include the March 6, 2009 Order of the Appeals Council
adding evidence to the record (TR 6); Plaintiff's August 12, 2008 request for review of the
ALJ's hearing decision (TR 7); the ALJ's decision (TR 11); and the SSA's December 8, 2005
notice of Plaintiff's disapproved SSI claim (TR 52).

[2] Plaintiff protectively filed his applications for DIB and SSI on May 12, 2005.  TR 71.

shoulder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant can lift and carry up to 20 pounds occasionally, or 10 pounds frequently, sit for six hours out of [an] eight hour day and stand for up to four hours out of an eight hour day. The claimant may need to alternate between sitting and standing every 30 minutes to an hour. The claimant cannot perform any constant stooping, squatting, or bending.

6.    The claimant cannot perform past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on April 12, 1968 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-17.

On August 12, 2008, Plaintiff timely filed a request for review of the hearing decision.

TR 7.  On March 6, 2009, the Appeals Council issued a letter declining to review the case (TR 3-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. §§ 405(g) and 1383(c)(3).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) evaluating the credibility of Plaintiff's complaints; (2) the weight he accorded the opinions of Plaintiff's treating physician Dr. Smith and consultative examiner Dr. Cox; (3) stating that Plaintiff "had no past relevant work when in fact [Plaintiff] was insured through June 30, 2004, and was at SGA levels for much of the 1990's"; and (4) finding at step five of the sequential evaluation process that there existed a significant number of jobs that Plaintiff could perform.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in evaluating the credibility of his complaints. Docket No. 15. Specifically, Plaintiff argues that "the ALJ did not properly apply the relevant standards for evaluating the plaintiff's complaints, and he failed to clearly state the reasons for rejecting [Plaintiff's] testimony." *Id.*

Defendant responds that the ALJ properly weighed Plaintiff's allegations and "gave reasons for his credibility determination." Docket No. 20.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(3)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, Plaintiff stated the following regarding his pain:

> [M]ainly it's in my lower back and down my right leg. I get this burning, sharp pain just like a poker sticking down my leg or a knife sticking in my backside right there. And just every time I try to do something I wind up having to stay in bed for maybe sometimes two or three days. It just gets where I can't do nothing.

TR 177. Plaintiff also reported that he experienced shoulder, neck, and chest pain. TR 178-179. When the ALJ asked Plaintiff if his "worst problem" was "by far and away" his "back and leg

pain," Plaintiff answered, "Yeah. Back and leg pain." TR 179. The ALJ found that "the

claimant's medically determinable impairments could reasonably be expected to produce some

of the alleged symptoms; however, the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent that they are

inconsistent with the residual functional capacity assessment for the reasons explained below."

TR 15.

In making this determination, pursuant to 20 C.F.R. § 404.1529(c)(3), the ALJ

considered evidence relating to the location, duration, frequency, and intensity of Plaintiff's pain,

and the treatment or measures he used to relieve pain. Specifically, the ALJ stated:

> Notably, the claimant has required only conservative, sporadic
> treatment for his allegations of crippling pain. The record contains
> no objective evidence of any significant discogenic or joint
> abnormalities. The claimant has not required surgery or
> emergency room treatment for pain. His chest x-rays and CT
> scans in 2007 revealed only acute pneumonia. His 2007
> echocardiogram revealed only mild abnormalities. His clinical
> exams revealed no significant neurological or motor abnormalities.
> In fact, in January 2007, his treating family physician noted that
> the claimant had no muscle atrophy whatsoever, and in May 2007,
> he noted that the claimant had "excellent" muscle tone in all four
> extremities and that he was able to fully bend over to take off his
> boots without apparent pain.

TR 15. *See also*, TR 126-133, 134-143. The ALJ specifically noted that the clinical exams by

Plaintiff's treating physician, Dr. Smith,[4] "universally failed to reveal any significant

neurological or motor deficits," and that Plaintiff "required no referrals to specialists, emergency

room treatment, or inpatient care." TR 14. *See also*, TR 126-133. With regard to Plaintiff's

_____

[4] The signatures on the treatment notes from TR 126-133 are illegible or absent, and the
notes are not otherwise identified; the ALJ, however, refers to these notes as Dr. Smith's (TR 14,
15).

echocardiogram, the ALJ noted that "the record does not indicate that the claimant required any significant cardiac or pulmonary follow-up care." *Id.* The ALJ also discussed Dr. Cox's consultative examination of Plaintiff, stating:

> Dr. Cox found that the claimant had a normal gait, clear lungs, and a regular heart rhythm. Dr. Cox noted that straight leg raising was negative and that the claimant had a normal range of motion in the spine and all extremities. He found no significant neurological or motor deficits.

TR 14. *See also*, TR 161-165.

As can be seen, the ALJ's decision specifically addresses the evidence of record. TR 14-15. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the

reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment." TR 15. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 2. Weight Accorded to the Opinions of Dr. Smith and Dr. Cox

Plaintiff argues that the ALJ erred in failing to accord controlling weight to the opinion of Dr. Smith because Dr. Smith was Plaintiff's treating physician as defined by 20 C.F.R. § 404.1502. Docket No. 15. Defendant responds that the ALJ properly evaluated the opinion of Dr. Smith. Docket No. 20. Specifically, Defendant argues that Dr. Smith's opinions were inconsistent with other evidence in the record, so the ALJ was not required to accord them controlling weight. *Id.*

Plaintiff also argues that the ALJ erred when he accepted only a portion of Dr. Cox's findings and rejected Dr. Cox's opinion that Plaintiff "needs breaks every 30 minutes or every hour." Docket No. 15. Defendant responds that Plaintiff fails to offer any reasons to support his assertion that the ALJ's findings on that point were erroneous, and that, regardless, the ALJ articulated his reasons for discounting Dr. Cox's opinion that Plaintiff would need breaks every

thirty minutes or hour.  Docket No. 20.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2)  Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3)  Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4)  Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5)  Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
>      ...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

The record reflects that Dr. Smith[5] examined Plaintiff on eight occasions. TR 126-133. Dr. Smith also completed a Medical Assessment of Plaintiff's Ability to do Work-Related Activities form on May 23, 2008. TR 123-125. In this assessment, Dr. Smith opined that Plaintiff could occasionally carry a maximum of ten pounds; frequently carry a maximum of less than five pounds; stand a total of less than two hours in an eight-hour workday and twenty to thirty minutes without interruption; sit a total of three to four hours in an eight-hour workday and twenty to thirty minutes without interruption; never climb, stoop, kneel, crouch, or crawl; and occasionally balance. TR 123-124. Dr. Smith further opined that Plaintiff's reaching, handling, feeling, pushing, and pulling were affected by his impairment. TR 124. Dr. Smith additionally opined that Plaintiff had environmental restrictions regarding heights, moving machinery, extreme temperatures, chemicals, dust, fumes, humidity, and vibration. TR 125. Ultimately, Dr. Smith opined that Plaintiff was "totally disabled." *Id.*

As an initial matter, Dr. Smith's opinion that Plaintiff was "totally disabled," is not entitled to controlling weight, as the determination of disability is a legal issue that is reserved to the Commissioner. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Regarding the opinions Dr. Smith expressed in his Medial Assessment of Plaintiff's Ability to do Work-Related Activities form, the ALJ stated:

---

[5] As previously noted, the signatures on the treatment notes from TR 126-133 are illegible or absent, and the notes are not otherwise identified; the ALJ, however, refers to these notes as Dr. Smith's (TR 14, 15).

> [T]he undersigned assigns no weight whatsoever to the severe
> functional limitations given to the claimant by Dr. Smith in May
> 2008. Said functional assessment is wholly inconsistent with the
> claimant's benign clinical exams and sporadic, conservative
> treatment. It is also unsupported by the objective scans or x-rays.
> It is also inconsistent with the clinical findings of Dr. Cox, the
> consultative examiner.

TR 15.

Further explaining his determination to accord no weight to Dr. Smith's May 2008

opinion, the ALJ stated:

> Notably, the claimant has required only conservative, sporadic
> treatment for his allegations of crippling pain. The record contains
> no objective evidence of any significant discogenic or joint
> abnormalities. The claimant has not required surgery or
> emergency room treatment for pain. His chest x-rays and CT
> scans in 2007 revealed only acute pneumonia. His 2007
> echocardiogram revealed only mild abnormalities. His clinical
> exams revealed no significant neurological or motor abnormalities.
> In fact, in January 2007, his treating family physician noted that
> the claimant had no muscle atrophy whatsoever, and in May 2007,
> he noted that the claimant had "excellent" muscle tone in all four
> extremities and that he was able to fully bend over to take off his
> boots without apparent pain.

TR 15. *See also*, TR 126-133, 134-143.

As the ALJ notes, Dr. Smith's May 2008 assessment is inconsistent with Plaintiff's

"benign clinical exams." TR 15. Dr. Smith's treatment notes from December 7, 2006 indicate

that Plaintiff was having shoulder pain, but that pain medications were effective, and that

Plaintiff requested refills of those medications. TR 128. Dr. Smith's treatment notes also

indicate that on at least one occasion Plaintiff's shoulder was "better." TR 127. Dr. Smith's

treatment notes further indicate that Plaintiff had no muscular atrophy, and on May 7, 2007, Dr.

Smith noted that the muscle tone of Plaintiff's arms and legs was "excellent." TR 128, 131.

As the ALJ also notes, Dr. Smith's May 2008 assessment is "unsupported by the

objective scans or x-rays." TR 15. In his May 2008 assessment of Plaintiff, Dr. Smith indicated

that Plaintiff's "HNP L4 w/ impingement" supported his assessment of Plaintiff's physical

capabilities. TR 123. While Dr. Smith's treatment notes do mention "MRI - L4 impairment"

and "HNP L4L5" (TR 127, 132), no supporting MRI test results appear in the record.

Under the sections of the assessment entitled "physical functions affected by the

impairment" and "environmental restrictions caused by the impairment," Dr. Smith left blank the

question: "What are the medical findings to support this assessment?" TR 124. Dr. Smith failed

to identify any medical findings to support his assessment.[6]

Finally, as the ALJ additionally notes, Dr. Smith's May 2008 assessment is "inconsistent

with the clinical findings of Dr. Cox." TR 15. In Dr. Cox's March 9, 2006 assessment of

Plaintiff, Dr. Cox opined that Plaintiff could lift ten pounds frequently and twenty pounds

occasionally, "sit for up to six hours in an eight-hour workday for the break period every hour,"

and "stand for up to four hours in an eight-hour workday for the break period of every thirty

minutes." TR 164. Dr. Cox further opined that Plaintiff should avoid stooping, squatting,

bending, and kneeling for fifteen minutes at a time, and should perform these activities for no

longer than two hours total in an eight-hour workday. *Id.* Dr. Cox indicated that Plaintiff's

abilities to hear, speak, and communicate were "unimpaired." *Id.*

Dr. Smith was Plaintiff's treating physician, a fact that would justify the ALJ's giving

greater weight to his opinion than to other opinions. As has been noted, however, Dr. Smith's

opinions contradict other substantial evidence in the record. As the Regulations state, the ALJ is

---

[6] While the record reflects that a series of September 2007 tests on Plaintiff's chest revealed some abnormalities, Dr. Smith did not indicate that he relied on any of these test results in his May 2008 assessment of Plaintiff. *See* TR 123-125, 134-143.

not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Smith's evaluation controlling weight.

With regard to Plaintiff's argument that the ALJ erroneously discounted Dr. Cox's opinion that Plaintiff would need breaks every thirty minutes or hour, Dr. Cox performed a consultative examination of Plaintiff on March 9, 2006. TR 161-165. As previously discussed, in this assessment, Dr. Cox opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, "sit for up to six hours in an eight-hour workday for the break period every hour," and "stand for up to four hours in an eight-hour workday for the break period of every thirty minutes." TR 164. Dr. Cox further opined that Plaintiff should avoid stooping, squatting, bending, and kneeling for fifteen minutes at a time, and should perform these activities for no longer than two hours total in an eight-hour workday. *Id.* Dr. Cox also noted that Plaintiff's abilities to hear, speak, and communicate were "unimpaired." *Id.*

With regard to Dr. Cox's assessment, the ALJ stated:

> While said assessment is also largely unsupported by the benign objective clinical evidence, I accept Dr. Cox's opinion to the extent that claimant is limited to light exertion essentially. I do not see support for the opinion that the claimant needs breaks every thirty minutes or every hour. Frankly even a limitation to light exertion is supported primarily by subjective complaints given the paucity of objective abnormalities.

TR 15.

As the ALJ stated, the record does not support Dr. Cox's opinion that Plaintiff needs breaks every thirty minutes or every hour. For example, Plaintiff himself never alleged that he needed frequent breaks. *See, e.g.,* TR 79, 82-85, 92, 111-112. Additionally, Dr. Doster opined in his physical residual functional capacity assessment of Plaintiff that Plaintiff could sit and stand or walk about six hours in an eight-hour workday "with normal breaks." TR 149. Cathy Graves, who administered a vocational analysis worksheet to Plaintiff, indicated that he could sit and stand or walk for six hours a day each, and did not indicate that Plaintiff needed any breaks. TR 86. Moreover, as the ALJ noted:

> The record contains no objective evidence of any significant discogenic or joint abnormalities. The claimant has not required surgery or emergency room treatment for pain. His chest x-rays and CT scans in 2007 revealed only acute pneumonia. His 2007 echocardiogram revealed only mild abnormalities. His clinical exams revealed no significant neurological or motor abnormalities.

TR 15. *See also,* TR 126-133, 134-143.

As has been discussed, the ALJ must weigh all the evidence of record and make a reasoned decision. When there is conflicting evidence, the ALJ is permitted to accept that evidence which he finds credible, and reject that evidence which he find unsupported by the record as a whole. The ALJ did not accept Dr. Cox's opinion regarding the need for constant breaks because that opinion was not supported by the record. TR 15. That determination was within the ALJ's province. The ALJ's decision stands.

Because the ALJ properly evaluated the opinions of Drs. Smith and Cox, Plaintiff's argument fails.

### 3. Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ erred in stating that Plaintiff had no past relevant work.

Docket No. 15.  Specifically, Plaintiff argues that "the Honorable ALJ stated the claimant had no past relevant work when in fact the claimant was insured through June 30, 2004, and was at SGA levels for much of the 1990's." *Id.*  Defendant responds that Plaintiff is simply incorrect, as the ALJ made no such finding.  Docket No. 20.

Past relevant work is work that a claimant has performed within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to perform it.  20 C.F.R. § 404.1560(b).  If it is found that a claimant has the capacity to perform his past relevant work, then the claimant will be found not to be disabled.  20 C.F.R. § 404.1560(c).

Plaintiff contends that the ALJ's statement that he had no past relevant work constitutes reversible error, because he had, in fact, worked and was insured through June 30, 2004.  Docket No. 15.  Although the ALJ stated in finding number nine of his decision that, "Transferability of job skills is not an issue because the claimant does not have past relevant work," this appears to be a harmless misstatement, because the ALJ also stated in finding number six of his decision that, "The claimant cannot perform past relevant work," thereby indicating that the ALJ recognized that Plaintiff indeed had past relevant work.  TR 16.  Further clearly indicating that the ALJ was aware of, and considered, Plaintiff's past relevant work history, the ALJ noted the following in his decision:

> At the hearing, the vocational expert testified that the claimant's past relevant work as a carpenter (framer) consisted of medium exertion, skilled work; that his past work as a logger consisted of heavy exertion, semi-skilled work; that his past work as a sawmill worker consisted of medium exertion, semi-skilled work; and that his past work as a hand cutter consisted of light exertion, semi-skilled work.  The vocational expert testified that the claimant had no transferable skills.  The vocational expert further testified that the claimant, considering his residual functional capacity, could

not perform any of his past relevant work as he actually performed
it or as it is generally performed in the national economy.

TR 16.

As can be seen, the ALJ was aware that Plaintiff had past relevant work, and found that

he was unable to return to, and perform it. The ALJ's misstatement in finding number nine is

harmless error. Accordingly, Plaintiff's claim fails.

## 4. The ALJ's Finding a Significant Number of Jobs

Plaintiff argues that the ALJ erred in finding at step five of the sequential evaluation

process that there existed a significant number of jobs that Plaintiff was capable of performing.

Docket No. 15. Specifically, Plaintiff argues that "[t]he Vocational Expert identified only 4,700

statewide jobs available, but the claimant lives in a remote part of Tennessee in a county that has

approximately 15,000 residents so this is not a 'significant' number of jobs that would exists

[*sic*] in the national or regional economy." *Id.* (Citation omitted).

Defendant responds that the ALJ properly found that a significant number of jobs existed

that Plaintiff was capable of performing. Docket No. 20. Defendant additionally contends that

"an ALJ is not required to consider what jobs are available in an individual's neighborhood." *Id.*

At the fifth step of the five-step sequential evaluation process set forth in 20 C.F.R. §

404.1520(a)(4), in order to find a claimant disabled, the commissioner must produce evidence

that demonstrates that other work the claimant can do exists in significant numbers in the

national economy, either in the region in which claimant lives or in several regions in the

country. 20 C.F.R. § 404.1560(c). Whether work exists in the immediate area in which the

claimant lives is immaterial. 20 C.F.R. § 404.1566(a)(1). Rather, "the test is whether work

exists in the national economy, not in plaintiff's neighborhood." *Harmon v. Apfel*, 168 F.3d 289,

20

292 (6th Cir. 1999).

In the instant case, the VE found that there existed at least 4,700 jobs that Plaintiff could perform in the state of Tennessee and at least 179,000 jobs that Plaintiff could perform in the national economy. *See* TR 194-195. Although Plaintiff notes that he lives in a "remote part of Tennessee," the ALJ is not required to find that work exists in the immediate area in which Plaintiff lives in order to find that Plaintiff is not disabled at step five of the sequential evaluation process. 20 C.F.R. § 404.1566(a)(1). Rather, a claimant's decision to live in a remote location is not a factor to be considered in a disability determination. *Harmon*, 168 F.3d at 292 ("[T]he fact that plaintiff lives 70 miles from the nearest metropolitan area is a factor extrinsic to her disability and is not to be considered."). Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge